My name is Mark Picker. I'm the relative newcomer to the defense team. I've only been on it since 1988 as a law clerk while in law school. When I began working for Mr. Bonnefant as a law clerk for his trial counsel. I have been with the case since that time in one way or another representing Mr. Bonnefant since his prior trial counsel moved out of Nevada. The situation first of all the first question that your honors posed in the facts memo that I got last week was a question of statute of limitations. I think that that I think we have heard today that that issue does not exist as to Mr. Bonnefant. In fact the the government raised that issue in their brief. I think he was concerned about statute of limitations if I recall correctly as we were concerned about whether he filed his notice of appeal to us in a timely fashion. I was getting there your honor. Thank you. But I wanted to address because the lack of jurisdiction and failure to meet statute of limitations is addressed in the government's brief. I think by their very own language and by what you've heard today. He filed on time. He filed on time. He's unique in this case. He filed on the last day. And I can tell you that that I filed it on his behalf and and it was out of a certain amount of fear of what a DPA meant and whether there was a situation that would. How about the notice of appeal. There's a really good question. All right. Let me run through the chronology here. We filed on the very last day and we're at the on April 23rd 1997. And at the same time we filed a motion to join in the pending cases of Ripley Baker and Baker because those are the only remaining defendants in the process. What happened thereafter is that nothing happened for a period of months while the conflict issue and the discovery issue was discovered. It was discussed then because the judge read decided that Joinder wasn't the proper way to go about this in December of 1997. Mr. from Judge Reed saying you can't intervene because there's nothing to intervene into except I'll let you join in discovery. Thereafter we were not. We were severed again. Mr. Bonifant and I went off on our own again because Judge Reed severed us out again. We were then brought back in at a status conference that we were required to attend where I made an oral motion to join in the discovery for purposes of judicial economy. That's the order that was just discussed in the previous argument. We were allowed to join in at that point. We took part in all the discovery. We then even though there was no Joinder in there and there was no intervention we were allowed to take part in the evidentiary hearing on the issue of the jury. What do you do with the fact that the court granted a motion to dismiss your habeas dismissed parts of it I believe with prejudice and parts of it with leave to amend. We then have an order later on that says well they've never amended. So I guess they're out of this case. And from that point forward your name's name his name's appearing in captions. But there's no orders no orders made directly with regard to him. Am I right about that. Yes you're right Your Honor. And that's and that's a real confusion that exists in this case. And through all due respect to Judge Reed I think that there became a confusion about where we were. There is a February 28th 2002 order that you've just referred to in which we're given leave to amend. There's then status conferences in between and other things that go on. But what's pending most at that point is the question about the other pending issues and whether we're joined in those issues with or allowed to intervene or somehow nebulously joined in with Baker Baker and Roopley on the remaining issues. And that was and then on December 17th the order then comes out regarding Roopley Baker and Baker saying they're done. Well your review of the record shows there's absolutely no judgment as opposed to addressing Mr. Bonifant ever. There's not one on February 28th 2002. There's not one on December 17th 2002 because that one only addresses Baker Baker and Roopley. So the court hasn't even ruled on your case yet. Well that that's a good question and that's what the ultimate. The final judgment that he entered had Bonifant's name in it. It had Bonifant's name in the caption. He dismissed the others. Bonifant's name in the caption but does not address him in the body of the order or the or in the judgment. So you're not you're not too late you're too early. Well that's it. And of course then what I what happens is January 20th 2003 is a holiday. So the ending of the 30 days for the notice of appeal is January 21st 2003. We prepare a notice of appeal that final week sending it over because at some point during that week Judge Reed becomes concerned that we got left out of the judgment and we should file a notice of appeal. And I get that information through his clerk. And there's nothing official about that. But that's why we end up filing on January 21st 2003 our notice of appeal. On January 24th 2003 Judge Reed says OK I've got the notice of appeal. I'll accept that. I'll accept it as a request for a certificate of appeal ability. I give a certificate of appeal appeal ability in my in this minute order. Go off to the Ninth Circuit have a good time. And here we are. So listen. He treated that judgment as the final judgment in Mr. Bonaparte. And also treated the then treated the notice of appeal as timely. Yes. And granted the certificate of appeal ability. So I guess arguably we were on time and we're here properly. Although Mr. Bonaparte and I continue to be wandering off in the wilderness, you know, as the poor stepchildren of this case at times. Because, as your owners will also note, on April 30th of 2003 this court allows the two appeals to join. On October 8th 2003 you sever us again and leave Mr. Bonaparte and I to appeal on our own. And then we file our brief on December 16th because we didn't know we'd been severed. So we thought we were joining in their appeal and apparently we were not allowed to. So we're here. I think that. It's not an accident you're here on the same day. I had a feeling that was the case, Your Honor. And we have discussed that among ourselves. So you addressed the merits somewhat. Thank you, Your Honor. Before all your time expired. Thank you. Based on looking at the merits. And the key first issue, of course, is the juror issue. And that, you know, I heard the government's argument and the prior argument. And here's the problem with the logic used therein. It is that here we have a full week of hearings on this single issue. We have a variety of depositions, statements. We have witness testimony. And Judge Reed at the end decides and announces his decision. I find that this juror and that bailiff, that their testimony is not credible on the issue that they had nothing to do with each other. I find that not credible. I find it the opposite. But I believe everything else they said. Because certainly they wouldn't lie about the other things since they lied to me about that. That's where the dichotomy in that decision is. We tell jurors that all the time. Now, why is that a dichotomy? Why is it a suggestion that if you're not credible on one point, you must be incredible on other points? I mean, sure you can raise that inference. Sure. And that is the inference. And that's the problem is that that inference doesn't get addressed. What Judge Reed does is he says, okay, I'm separating these two things as if they're totally unrelated. I find that part of their testimony incredible. Now I'm just going to address this. Well, they're getting up there. They're giving me their word. There's nothing that verifies this. And, in fact, the facts, circumstances, because of the dates and the times, the information about whether the CSO had moved furniture into the juror's house, whether he had an actual address, for six months during the course of the last or the last six months of the trial, at the minimum, all of those things are contradicted by everybody else. We review that. Well, everything is not contradicted by everybody else. He didn't believe one of the guys he thought was a screwball. He didn't believe that person. He did believe what I believe some of her coworkers said, that she was an extraordinarily careful person and was very careful about the jury and about not talking about things. She was really quite extraordinary. I think Judge Reed refers to that, and it's not just out of her words. So it's not all the witnesses said everything they said was wrong. That's not really accurate, is it? No. And I agree with you, Your Honor, but the problem with that is, is that if she's extremely careful, what is that? And doesn't that statement get belied? Doesn't it get contradicted by the fact that she's got an order not to associate with anybody, not to discuss this, anything else, and she's dating a CSO during the time? Did she have an order that said, do not see any CSOs? Of course she couldn't associate with people and she couldn't discuss it. The question is, did she? And that's where we have the problem, Your Honor, is that the only persons, the only two people who are intimate in that conversation both lied to the court about their relationship. Well, I know they lied. The court didn't believe them. Let's put it that way. The court, you all like the court's brilliance. I've heard a lot about what a terrific judge he is, and he is a terrific judge. And you all really like his brilliant sorting of the facts as to that question, okay? But you don't like the way he sorts the facts on the rest of the questions. So he says, yeah, I don't believe that. I think something was going on. I don't believe he was residing with her. He does say that. But I think something was going on between them ahead of time, and that's inferred by the fact of how quickly it happened after time. And some of the other testimony, Your Honor. Excuse me? And some of the other testimony by other people about the relationship. And I guess what I – I guess the – not I guess. The fear is on Mr. Bonifan's part in this case is that what is a situation is that Judge Reed looks at that and then looks at the second prong and says, oh, my goodness, what if I have to try this case for 16 months again, which Your Honors won't let him because of what you said in the Baker decision already. You – and we only have one defendant at that point. But I think that the inference then is not carried through. I don't think that he addresses the second prong in the cases that we've cited in our brief, and I understand that my brief is pretty identical to Mr. Roofley and Mr. Baker and Baker's, and that is not a – that is not a coincidence either. So based on all of that, Your Honor, I believe that it is – that what has not been reached is the second prong and wasn't properly addressed. I believe that the court acted in error. So we should assume that Judge Reed, having honestly decided, yeah, these people have something going on between them beforehand, then intentionally or unintentionally said to himself, but I sure don't want to try this stinking case again, and so I'm going to go on and make the other fact findings this other way. I believe it's unintentional, Your Honor, and I believe that what it is is the first prong does not require reversal. The second prong does. What's the second prong? The second prong is once there's been a relationship proven, whether there's a taint in the jury, whether that there's been a discussion of information that was to be excluded from the jury and was not, by a discussion between the CSO and the juror, and whether that information then gets passed along, whether overtly or less overtly, to the other members of the jury. And I believe that that's that second prong. It is a much tougher prong. There's no question about that. That's a much tougher prong for us to meet, but I believe that that's where unintentionally Judge Reed backs off, because I believe the information and the appearance itself is clear that if there are, that this CSO had access to and contact with a variety of information that this juror was prevented from seeing by proper court rulings, and that those are things that this CSO clearly could have, and we believe did by the very inference of what the information was provided, did at least discuss, if not in detail, at least peripherally to a point that it taints that juror. What information are you talking about? I understand it's hypothetical because we don't know what was actually communicated. Specifically, that CSO was present during hearings where evidence was suppressed. Specifically, that CSO was present and had access to what was referred to euphemistically as the war room for the defense attorneys that had charts across the wall regarding witnesses and questionable testimony and things like that, defense strategy, things like that, that the juror should never have been privy to, that we believe, well, we know that CSO had access. Did he have just free access to that room? He didn't have free access to that room, but, well, I'm not sure that that's not true either, because the access throughout the building when the defense attorneys are not present is problematic in a building like that. So I guess that's the point on that. The other two issues or the other issue that's addressed in our brief regarding the fact that we were given discovery and it was taken away, I believe that the problem there is, is this confusion about where, which petitioner was where in the process and whether there was a discovery motion, because as you see in one of the orders that we provided, we're told that we're not allowed to do, I'm not allowed to do discovery, but I'm told I can do discovery, and then I'm said, and then I'm told, no, you can't really do discovery, but now you can do a motion for discovery, but at the same time Rupley Baker and Baker are addressing the same issues. Your Honor, I have about four and a half minutes I'd like to reserve that for rebuttal. Good morning again. Gregory Dam on behalf of the United States representing the government in this matter. I'd like to make one correction on the record with respect to the relative newcomers to this case. Although I did participate in the evidentiary hearing regarding the juror misconduct, I just became reacquainted with this case again about six weeks ago, so I think if there's a relative newcomer to the case, it's me. Probably us. Yes. With respect to the allegation that the court security officer was present during court hearings, I don't believe that there's any evidence of that whatsoever. In fact, I think that's quite contrary to the facts. I believe Mr. Flanagan specifically requested that the court security officer not be present during any of these. Were any of these defendants in custody? I believe they all were, Your Honor. So there were U.S. marshals present in the courtroom. Is that correct? Yes, that's correct. But as the court points out in its opinion, the court security officer was a figure aligned with the court and its neutrality to assist and provide security for the jury, not aligned with the prosecution or law enforcement. As I recall, we used to have the CSOs come up to take the jurors for lunch. Yes, and that's what this CSO did. But the CSO was never present, to my knowledge, in the courtroom. Well, occasionally they would walk, if I recall, they would occasionally walk through the building and walk into the courtroom. You know, just sort of check things out. This issue came up, as I understand it, at the beginning of the trial, and this particular court security officer, because he was assigned to be in charge of the jury, was specifically excluded by court order from the courtroom. From the courtroom as the trial proceedings were underway. Yes, that's correct. That's my understanding, that his sole function was to guard the jury and he was not privy to any information from the prosecution, nor was he privy to anything that occurred. Did he come up at the end of the day when the court released the jurors to walk them out? I believe that was part of his function. But it's my understanding he was not at any time present in the courtroom while any proceedings were taking place, either with or without the presence of the jurors. I read Judge Reed's order, but I can't remember, did he make a specific finding on that? I don't believe he made a specific finding on that because it wasn't an issue. Mr. Flanagan, as I understand it, had requested that this court security officer not specifically not be present in the courtroom, and Judge Reed granted that request. And that happened at the beginning of the case when court security officer Harris was tasked with the responsibility of taking care of the jury. The court's order of July 6th of this year was provided to me this morning, as I mentioned by Mr. Gibson, and I appreciate that. This court asks whether or not final judgment was entered by the district court with respect to appellant, and if so, when. There are actually two components of this case that are related to issues dealing with the appellant, with the Petitioner Bonafide. The first is at the conclusion of the juror misconduct hearing on May 25th of 2001, Judge Reed denied all of the claims for all of the petitioners with respect to juror misconduct. Thereafter, by an order signed on February 28th of 2002 and entered on March 1st of 2002, Judge Reed denied all of the additional claims against Mr. Bonafont. However, the judge allowed Mr. Bonafont 30 days in which to amend his petition. He also, parenthetically, allowed Mr. Rupley and the Bakers to amend their petitions as well. They did so. Mr. Bonafont did not. The 30 days expired, and Mr. Bonafont did not amend his 2255 petition. The trial court, in a minute order that does not appear in any of the excerpts of record, entered this minute order on May 23rd of 2002, and it's at docket number 3352. The court said in that minute order with respect to Mr. Bonafont, the court has reviewed the status of this case. It appears that Defendant Bonafont did not file any amended 2255 petition as permitted by our order number 3342, filed on February 28th of 2002. Thus, the status of the case appears to be that all remaining claims have been dismissed without the filing of any amended 2255 motion in an effort to cure the deficiencies we set forth in our order number 3342. It appears to me that when the Court issued its final order with respect to Mr. Bonafont on February 28th or March 1st when it was entered of 2002, that that was the final order disposing of all of Mr. Bonafont's claims. He didn't enter a final judgment, though, did he? No. The district court. No. He didn't enter a separate judgment. No. And potentially a judgment could have been entered at that point because you think that the case was entirely over as to this defendant, but no such piece of paper was filed. That's right. What's the implication of that? That's an interesting question, and I'm – I'll have to admit, I looked into this, and I'm really not sure that I know the answer. There are these esoteric rules of civil procedure that really confound me. I would make a – It gets even better because the final judgment that's ultimately filed here listing all of these names is entitled judgment in a criminal case and makes no reference to the habeas proceedings whatsoever. And it – although it mentions Mr. Bonafont in the caption, it doesn't mention him in the body. The argument – Welcome to civil procedure. You're back in law school now. So what do we do with it? I think I could argue this issue both ways, but let me start out with the government's argument. The final order with respect to Mr. Bonafont was entered on March 1st of 2002. He's – it's not a final order because he's given – How could that be final? You have leave to amend. That's right. It's not a final order. I mean, it's final in the sense that all of the issues relating to his case have been resolved, but he's given leave to amend to correct certain deficiencies that the trial court found. He's given 30 days. The 30 days pass. He doesn't – he doesn't do anything. Yes. And WMX says that doesn't cut any ice. You need another order. Well, the civil rules seem to talk about the necessity for a judgment, but then there's a rule – That's a good reason. If there had been a judgment, we wouldn't have all these issues today. Well, there's still not a judgment. It's a little piece of paper. It says judgment, you know. Absolutely. You get it all the time. But then there's a civil rule, and I think it's 58, that seems to say that if an order is entered and there's no judgment entered thereafter for a period of like 150 days, I think it is, then by operation of the rule that a judgment should be deemed to have been entered at that time, I have to confess that at this point, I felt inadequate to try and resolve this particular question using civil rules. Counsel, the problem is that was not an order or a judgment. That gave leave to amend. And we have clearly said that when a complaint, for example, is dismissed without leave to amend, with leave to amend, that is not appealable. And if you don't amend within the 30 days, it's still not appealable. You've got to get a court order saying something at that. You must have a court order after that. Now, here we have this funny minute order that comes later, which says, it appears that such and such is true. I don't know what that means even. You know, it appears to me that this is a lovely courtroom. I mean, is that an order? So it looks like we never have an order. We never have a judgment at all as to Bonifant. I'd agree. But what Mr. Bonifant appealed from was not any, well, what he appealed from actually was the December order. The December judgment that didn't list his name. Well, he didn't appeal from the judgment. He appealed from the order. Yeah. But. But a time period that started with the final judgment, he would appeal, he would qualify as being within the allowable time period after that. Right. And the allowable time period is not, as I understand it, 30 days. I think you have 60 days because the government was a party. So he really was not cutting it as close as I believe he thought he did. There's a. Take from the fact that Judge Reed issued a certificate of appealability after that judgment was over. Well, I think Judge Reed clearly thought that he should be entitled to bring the issue to this Court. There's also some case law that seems to talk about how we should take a liberal approach to people filing notices of appeal and that sort of thing. And I did my darndest to try and resolve this issue, and I came up with all sort of great arguments. Another one that occurs to me that may come into play is that let's assume, for the sake of argument, that the Roopley and the Baker case is precluded by the AEDPA, that they didn't file timely. Anything that happened in their case, it seems to me, would be void ab initio. So then the question becomes, well, if that's true, then how can Mr. Bonifant coattail on something that happened in their case and file a notice of appeal from something that should have been void from the outset? Well, he had his own case. He did. And, actually, that raises a question. In your brief, there is an argument in the brief in the Bonifant case, lack of jurisdiction fairs the statute of limitations. And I thought the one thing that I knew in this case is that he met the one year. The government's two briefs, like the defendant's two briefs, are virtually identical. So you don't contest that Mr. Bonifant met the one year? No, not at all. If he had his case, and no matter what happened with the other defendants, the only final judgment that counts for him is the one that gets filed with all the names listed on the caption in the criminal case. That's the only thing I can find labeled final judgment. If you assume that by simply listing him in the caption, that that's a final judgment as to him, yes, correct. Otherwise, we don't have a final judgment for anybody in this case. So if we don't treat that, is there anything else labeled final judgment in any because that's even in the criminal case. Anything else in any of the habeas cases? Not that I'm aware of. So that's the only thing. If we deem that to be a final judgment for the purposes of the habeas cases, then that's the date for him. And the fact that his co-defendants maybe should never have been there in the first place doesn't matter. That's the only piece of paper he has that he can appeal from. That's certainly a reasonable argument, and I would not disagree with that. Let me ask you, go back to something that you said a few minutes ago, and it's rumbling around my head. You talked about the order of the district court that this CSO not be in the courtroom. And as I heard you say that, it sounded familiar, and I went rummaging through my papers. I can't find a more specific reference to that. Do you have in mind something that's in the record in particular or some specific order by the judge that spoke to that? My recollection of that fact is crystal clear, but I can't tell now whether or not it was based upon something I read in the record or when I met with a trial counsel in this case and discussed the matter with him. I'm inclined to think that it was something that trial counsel mentioned to me as something that occurred. I don't have anything in the record that I can point to that would establish that fact. I've already talked about the merits of the juror romantic issue, and I won't delve into that again. With respect to discovery and Mr. Bonifant, however, there seems to be nowhere in the record that I can find where Mr. Bonifant filed his own separate, independent request for discovery. In fact, the trial court indicated in a minute order number 3141, dated September 11, 1998, indicated that Bonifant has not filed any separate motion to compel discovery. If Bonifant properly files a motion requesting discovery, the court will consider the question of whether good cause has been shown in deciding whether to grant him discovery in this case. Bonifant was given 30 days to file a discovery motion. I cannot find anywhere in the record where Mr. Bonifant did, in fact, file a discovery motion. Discovery was extensively discussed by the court in the December order with respect to the Roopley and the Bakers, and the trial court said that it was just a fishing expedition. If you look at the February 28, March 1 order that disposed of Mr. Bonifant's case, and it's an extensive order, I think it's some 27 pages in length, it doesn't mention discovery whatsoever, which leads me to conclude that, in fact, Mr. Bonifant never did file his own independent discovery motion, and therefore he has nothing to appeal from to this court with respect to the discovery issue. This has been an interesting exercise for me to try and reconstruct what happened. I'm not sure, well, I'm quite sure that I didn't perfect that task, but based upon the record before this court and based upon the merits of the claims, I would suggest that the trial court was eminently correct in denying the 2255 petitions with respect to all petitioners, and we'd respectfully request that this court do the same. Thank you, counsel. Short rebuttal. Thank you. To address the last issue, Your Honors, in the minutes of the court dated December 31, 1997, which is the 79 of our appendix, that is where the motion for intervention and the joinder and everything is addressed, and it talks about the discovery and discovery deadline, and it addresses both Mr. Rupley and the Bakers, as well as Mr. Bonifant, and it allows Mr. Bonifant to join in with the discovery. In fact, it was ordered at that point that he could obtain the benefit of any discovery conducted by his co-defendants and then could have a chance to amend or supplement his petition. On which date was that, the minute date? That is the minute order at page 79 of our appendix, volume 1. At page 83 of the same appendix is Mr. Bonifant's motion seeking the court's delay in considering his 2255 petition so he could take part in the discovery, join in the discovery motion that had been made by his co-defendants and participate in that discovery. That is how, at the status conference that is held thereafter on April 13, 1998, that Mr. Bonifant is able to join into that discovery. Was there some additional discovery that he wanted? No. We wanted to do the same discovery that Mr. Rupley and the Bakers were doing, because our issues were identical. And so when we were then thereafter at some subsequent point to this, ordered to do a motion for discovery, there, of course, was a confusion because we had already done discovery. And on behalf of Mr. Bonifant, quite honestly, I couldn't figure out whether I was supposed to file a motion to get permission to do the discovery I had already done and had been accepted by the court or whether it was for subsequent discovery. And that's the confusion, well, unfortunately, that reigns throughout this record. Well, with respect to the claims apart from the juror issue, misconduct issue, was there some particular item of discovery you were looking for that you said, Judge, we need to take some additional discovery on this particular issue because it would allow us to show X, Y, and Z? And those are the things that are outlined in our brief that, in fact, I think are more detailed in the co-defendant's brief and in the discovery. My question was, did Mr. Bonifant make that request? Yes. We verbally made that request to join into all discovery at the status hearing on April 13th of 1998. And at that point, Judge Reed allowed us to join in all discovery. So the discovery that they were seeking then satisfied your concerns? Correct, Your Honor. And that's all that we were seeking was the same discovery that the co-defendants were seeking to do. And that's somewhat addressed, again, in the minute order dated April 13th, 1998, which is at page 87 of our appendix. So you can see there's a brief period of time there where there's a flurry of things having to do with discovery and what Mr. Bonifant wanted, and all we wanted to do on Mr. Bonifant's behalf was join in and have the same discovery that Mr. Rookley and Mr. Baker and Mr. Baker were going to do, because that satisfied the issues we were going to do. And those are the issues that we've raised in our brief. I don't want to belabor that. I know that you've all seen those. So what it came down to was, and to address the final judgment issue, there seem to be two remedies that this Court can address on that. One is that you can accept Judge Reed's certificate of appealability and that it's a valid notice of appeal and it's timely and it's in the right place, or you can send us back and have Judge Reed issue a judgment and we'll do this all over again. I'm not sure the latter is something that's appetizing, but it's certainly something that's open for the Court. Thank you. Thank you so much. We appreciate all the arguments in this case, these cases. Both these matters will stand submitted. Thank you. And we're in recess now until tomorrow. Thank you. Thank you. Thank you.
judges: Fernandez, Paez, Clifton